UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.

DEMETRIO FLORES III,

               Defendant.

_____/

No. 1:19-CR-271

HON. HALA Y. JARBOU
United States District Judge

## UNITED STATES' MOTION FOR
## UPWARD DEPARTURE OR VARIANCE

Flores is 27 years old, has spent all but one year of the last decade in prison, and shot two people in that short time. After being arrested following those shootings, Flores admitted this as to one of them: "honestly I was looking to kill this man." In this case, Flores illegally possessed a gun, and his messages indicate he had shot it twice and was looking to shoot it again. The United States respectfully requests the Court vary or depart upward from the recommended Guideline range.

### RELEVANT FACTUAL BACKGROUND

On May 26, 2010, Flores was riding on a bike, pulled a .22 caliber pistol, fired five shots, and hit Mr. Williams in the leg. (R. 124: PSR, PageID.1931-32.) Flores was later found in Florida and explained he was trying to shoot someone else and accidentally hit Mr. Williams. Flores also admitted, "honestly I was looking to kill this man."

On July 8, 2010, Flores and two friends pulled up beside Mr. Arredondo, yelled "King Love," and shot him. (R. 124: PSR, PageID.1930-31.) The suspects fled. Flores was later found in Florida, and he admitted shooting Mr. Arredondo on accident because of

a gang dispute he had with the Gangster Disciples. According to Flores, "he was looking for someone's head."

## **LEGAL ANALYSIS**

I. **The Court should vary or depart upward because Flores should not be rewarded for shooting people and fleeing.**

Flores only received criminal history points for one of the two shootings outlined above because he fled after both of them. The presentence report correctly apportions criminal history points to only one of these two incidents. (R. 124: PSR, PageID.1930-32.) U.S.S.G. § 4A1.2(a)(2) instructs that multiple sentences are treated as one if (1) the defendant was arrested on the same day for both and (2) the sentences were imposed on the same day. Here, because Flores fled to Florida after the May 2010 and July 2010 shootings, he was arrested on both outstanding warrants in Florida on January 13, 2011. (R. 124: PSR, PageID.1930-32.) And because he committed both shootings within the jurisdiction of the 20th Circuit Court, his cases were consolidated, and he was sentenced on the same day. (*Id.*)

Had Flores not fled after shooting people, he would instead have a Guideline range of 110-120 months. Flores's convictions would have been separated by intervening arrests, and each shooting would have received 3 criminal history points. Both shootings would then have qualified as violent felonies under the Guidelines because Flores was convicted of felony assault in association with each of them. If Flores had two prior violent felonies, his adjusted offense level would have been 26, instead of 22. (*Compare* U.S.S.G. § 2K2.1(a)(2) *and* § 2K2.1(a)(4)(A).) Additionally, his criminal history would be

V, instead of IV. An offense level 26 and criminal history category V would have resulted in a Guideline range of 110-137, but the statutory maximum for Flores's offense of conviction is 120, so the final Guideline range would have been 110-120.

### A.  The Guidelines' application note provides for an upward departure here.

U.S.S.G. § 4A1.2(a)(2) is the Guideline provision that leads to Flores only receiving criminal history points associated with one of the two shootings. However, application note 3(B) expressly provides for an upward departure in cases like this one:

> **Upward Departure Provision**—Treating multiple prior sentences as a single sentence may result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that the defendant presents to the public. In such a case, an upward departure may be warranted. For example, if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were treated as a single sentence because either the sentences resulted from offenses contained in the same charging instrument or the defendant was sentenced for these offenses on the same day, the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which the defendant has committed crimes.

This is precisely the kind of case where the single-sentence rule "underrepresents the seriousness of the defendant's criminal history and the danger that the defendant presents to the public." Indeed, both of Flores's shootings resulted from him accidentally shooting the wrong person—someone not involved in the incidents about which he was upset. And following one of them, he admitted he was trying to kill someone. Flores is dangerous, and a Guideline sentence does not adequately protect the public.

**B.  The Sixth Circuit routinely affirms upward variances in cases like this.**

The Sixth Circuit routinely affirms upward departures and variances when a defendant has a violent history of using guns. *United States v. Garner*, 577 F. App'x 453, 461 (6th Cir. 2014) (affirming upward departure after district court "explained that because of [defendant's] "long and substantial criminal history, including a detailed examination of [defendant's] repeated commission of drug and firearm crimes, a shorter sentence would not promote respect for the law, and, if Garner were out on the street, he would probably go back into dealing drugs, having guns, and engaging in violent conduct") (internal quotations and citations omitted); *United States v. Lawrence*, 510 F. App'x 406, 408 (6th Cir. 2013) ("The district court reasonably concluded that [defendant's] criminal history, which included violent and drug-related conduct; his disrespect for the law; his lack of acceptance of responsibility; and his attitude and behavior in court and in the probation office, warranted an upward variance.").

In the one year Flores was out of jail in the last decade, he shot two innocent people. At trial, the Government introduced these exhibits, taken from Flores's phone, indicating he shot that gun on January 4, 2019 and again on January 13, 2019:





(Trial Ex. 8(e).)

A few days later, Flores sent messages indicating he intended to get in a gun fight:



(Trial Ex. 8(g).)

And when police found Flores on the morning of January 24, 2019, he appeared ready to use a gun again. Indeed, Flores had a loaded magazine, a chambered bullet, more ammunition at the ready, and black latex gloves.



(Trial Ex. 15.)

Flores has a violent and dangerous history of using guns to shoot people. And during the limited time he was out of prison—but still on parole—he possessed and used the gun that forms the basis of his conviction.

## CONCLUSION

For the foregoing reasons, the United States requests the Court depart or vary upward to deter Flores from continuing to engage in violent activity with guns and protect the community.

Date: September 7, 2021

Respectfully Submitted,

ANDREW BYERLY BIRGE
United States Attorney


/s/ Davin M. Reust
DAVIN M. REUST
ANDREW J. HULL
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404